Filed 9/21/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.E., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>T.G.,<br><br>　　　Defendant and Respondent. | A147724<br><br>(Alameda County<br>Super. Ct. No. 0J14023382) |

　　　The Alameda County Social Services Agency (agency) appeals an order continuing an 18-month review hearing and extending the family's reunification services for up to 24 months. The agency contends the court erred in extending services based on a finding that the agency had failed to provide reasonable reunification services. Although significant services undoubtedly were provided, we shall affirm the juvenile court's finding that the services were not reasonably sufficient because they were not tailored to the particular needs of the family arising out of the unique circumstances of the situation. We also conclude that amendments made to Welfare and Institutions Code sections 361.5 and 366.22[1] do not restrict the court's authority under section 352 to extend reunification services from 18 to 24 months upon a showing of good cause.

---

[1] All statutory references are to the Welfare and Institutions Code.

**Factual and Procedural Background**

On August 9, 2014, the then 14-year-old minor was taken into protective custody by the Oakland Police Department after running away from her mother's home. Mother had refused to allow her to return home and asked that she be taken into the custody of Child Protective Services.

On August 11, 2014, the agency filed a juvenile dependency petition alleging that minor came within section 300, subdivisions (b) and (g). The petition alleged that mother was overwhelmed and unable to supervise minor due to minor's behavioral challenges, which included fire-setting, chronically running away, and suicidal ideations.

According to the detention report prepared by the agency, minor had been residing in Oakland with her mother, her older sister (then age 18) and a younger sister (then age 8). Mother "reported feeling very stressed and overwhelmed for some time because of [minor's] behaviors." Mother stated that minor "is 'manipulative' and 'lies a lot.' Further [mother] is concerned about [minor's] cutting behaviors, statements of suicidal ideation, an attempt to set her bedroom on fire, smoking marijuana, drinking alcohol, chronic running away, and an incident in November 2013 in which [minor] molested her younger sister. [Mother] believes that she is not able to meet [minor's] needs at this time." Minor reported to the agency that she ran away because she was beaten by her mother and also claimed that she had been molested by her older sister when they were younger. At the uncontested detention hearing, minor was detained with temporary placement and care vested with the agency.

In a combined jurisdiction/disposition report, the agency recommended that minor be declared a dependent of the juvenile court, out-of-home placement continue, and family reunification services be provided to mother. According to the social worker, mother expressed concern for minor's safety and well-being as well as a desire to protect her younger daughter from minor's behavior. Mother wanted minor to receive the help she needs and admitted she had struggled to obtain consistent therapy for minor and other supportive services for the family. Mother articulated her need for family therapy for

herself, minor, and her younger daughter. Minor also expressed her desire to participate in family therapy with her mother to work on their relationship.

The social worker reported that a referral was made for individual therapy and a psychological evaluation for minor. In the meantime, minor would be seen by a clinician through her group home. The initial reunification case plan required minor to "participate in and complete a psychological evaluation and comply with the recommendations provided therein" and to participate in individual and family therapy. Mother was also required to engage in family therapy.

At the uncontested jurisdictional hearing, mother submitted to the petition on the basis of the social worker's report, and the court found the allegations true. The court ordered the agency to provide family reunification services to "the child and to the mother." Visitation was ordered to be as frequent as possible consistent with the child's well-being.

At the six-month status review, in February 2015, the agency recommended that minor remain in her out-of-home placement and reunification continue. Minor reported that she wanted to return home to her mother, participate in family therapy, and visit with her younger sister. The agency and mother were concerned, however, about minor returning to the home because of her previous molestation of her younger sister. The social worker reported that both mother and minor were participating in weekly individual therapy and had begun family therapy in January 2015. The agency reported that the family therapist would incorporate the younger sister in the family therapy when appropriate.[2] The six-month review was submitted on the social services report. The court found that reasonable services had been provided by the agency and mother's progress was partial. The court ordered reunification services continued.

_____

[2] Although the status review report describes minor as having participated in a "psychological evaluation with Joe Torres, LCSW" who diagnosed her as having a "Depressive Disorder NOS [Not Otherwise Specified]," the agency later acknowledged that a complete psychological evaluation was not completed. The evaluation, which was described by counsel at the 18-month review hearing as an "initial" or "clinical" assessment, was never submitted to the court.

At the time of the 12-month status review, in July 2015, the agency recommended that minor remain in out-of-home placement and family reunification services be continued. Although minor wanted to return home and participate in services, mother was not able or willing to have minor returned to her home because of her ongoing concerns for the safety of minor's younger sister. The report explains, "[mother] believes that her daughter . . . requires therapeutic services and intervention to address her history of self-injurious behaviors and harm to others." The agency reported minor's younger sister had attended several family therapy sessions, but minor was a "trigger'" for her younger sister because of the past sexual abuse. Mother reported that minor's younger sister had either been taken to the emergency room for unsafe behaviors or placed on a section 5150 hold on eight occasions since April 2015. The younger sister's treating psychiatrist recommended that visits between minor and her younger sister be temporarily suspended.

Since the last review hearing, minor's placement had been changed twice. At the time of the hearing, minor was residing with a "fictive family member" in Sacramento. Because of transportation problems after moving to Sacramento, minor missed several family therapy sessions and her individual therapy was interrupted. The agency attempted to mitigate the transportation problems by providing minor Amtrak tickets. In May 2015, minor completed a medication evaluation, but was not taking the prescribed medication. Mother continued to attend family therapy each week, even when minor was not present, and continued her individual therapy. The 12-month review was submitted on the agency's report. The court found that reasonable services were provided by the agency and minor's out-of-home placement was necessary and appropriate.

At the time of the 18-month status review hearing in January 2016, the agency recommended that minor remain a dependent in out-of- home placement and that family reunification services be terminated. The agency reported that after going AWOL from her Sacramento foster home in early January, minor was placed in a group home in Oakland on an emergency basis. Minor was very unhappy in the placement and wanted to return home. The agency did not think she should be returned home because her younger sister continued to be "triggered" by minor. The report states that the younger sister "has

4

a history of unsafe behaviors and 5150 hospitalizations in part due to sexual abuse [she] experienced by her sister . . . . [Minor] cannot live in the home with her mother and sister because she is a trigger to her sister, until the issue is fully addressed." The report also states that mother and minor "need to participate in family therapy and then incorporate [the younger sister] into family therapy in order to make reunification possible and sustainable." The family therapist, however, had discharged the family from therapy in August because of minor's missed sessions. The report indicated that mother and minor had not participated in family therapy since the termination in August in part because mother rejected the social worker's offer to find a therapist in the Sacramento area and in part because minor's "inconsistent contact" prevented minor's individual therapist from conducting collateral family sessions with mother.

At the 18-month review hearing, the court rejected the agency's recommendation that reunification services be terminated. The court expressed significant concerns about the agency's failure to provide services specifically targeted at resolving the impediment to minor's reunification: minor's sexual abuse of her younger sister. The court explained, "even if we're just here about reasonable services to the mother, and tailoring, narrowly tailoring to the specific needs of the family, the mother and the child who is a dependent of the court, even there the agency falls short because there's never been any assessment as to whether or not the dependent minor needs sexual offender treatment, a specific type of therapy. There's never been any resources that I can see that have been provided to the mother about that specific subject, knowing that that is the core issue as to why mom and her daughter . . . cannot reunify at this point. [¶] . . . [W]e all know that [minor] cannot come home because the victim is in the home as well and the victim cannot handle [minor] being there. Maybe the services should be tailored to that specifically." The court reiterated that when the agency "know[s] that a child cannot be returned to the home based upon a core issue" and it does not "specifically address that issue with mother and the child . . . [t]hat is a lack of reasonable services." The court also questioned the agency's failure to have a psychological evaluation of the minor performed, noting that "[t]here's not been an assessment as to what type of therapy the minor should have,

5

specifically as to whether or not there should be sexual offender treatment." In ordering reunification services continued up to 24 months, the court stated, "mother has gotten her other child into therapy, and surrounded that child with services to help promote an environment where the possibility of reunification is very much an appropriate vision for the court at this time. . . . [T]he expectation of the court is that we sure-up all those things by doing assessments that are necessary to determine going forward what kind of therapy or services are necessary for the dependent minor in this matter . . . includ[ing] an assessment on sexual offender treatment. Or also to find a way, if the therapy that the minor is engaging in right now is helpful to her, to make sure we scaffold that and support it so that she can stay in therapy." The court found a substantial probability that minor can be returned to and safely maintained in the custody of mother within the extended period of services. The court observed, "Why wouldn't there be a substantial probability that the child would be returned to the mother at this point if all of the resources are in place and everyone is accessing those resources? It's not as if minor doesn't want to go home. It's not as if mother is not putting in the work to get what she needs to get done."

The agency filed a timely notice of appeal.[3]

## DISCUSSION

1. *The dependency court did not err in extending reunification services to 24 months.*

"The 18-month hearing represents a critical juncture in dependency proceedings. [Citations.] At the 18-month hearing 'critical' decisions concerning parental rights are made. [Citations.] The Court of Appeal has held: 'The Legislature has determined that

_____

[3] The notice of appeal was filed on March 14, 2016, and although briefing was completed in a timely manner, with no extensions of time requested, the case was not fully briefed until the middle of July and assigned to this court on its August calendar. Because the minor was removed from her home on August 9, 2014, services cannot as a matter of law be extended beyond August 9, 2016. While this appeal might be considered moot in that the period of additional services ordered by the trial court has by now expired and cannot be extended further, we reach the merits as the issue is capable of repetition and would otherwise evade review. (*In re Raymond G.* (1991) 230 Cal.App.3d 964, 967.)

6

the juvenile court must embrace or forsake family preservation at this point by circumscribing the court's options.' [Citation.] The minor must either be returned to the physical custody of his or her parent or the court must terminate reunification services and set a hearing for the selection and implementation of a permanent plan." (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1015.) It is, however, within the court's discretion under section 352 to continue the 18-month review hearing and extend reunification services up to 24 months upon a showing of good cause.[4] (*Id.* at p. 1016 [failure to provide reasonable reunification services is grounds for continuance.]; see also *Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510 [juvenile court may extend services beyond the 18-month statutory period if it finds "extraordinary circumstances 'involv[ing] some external factor which prevented the parent from participating in the case plan' "]; *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1792, 1796 [juvenile court has discretion "in a special needs case" to extend the reunification period].) In exercising its discretion under section 352, "the juvenile court should consider: the failure to offer or provide reasonable reunification services; the likelihood of success of further reunification services; whether [the minor's] need for a prompt resolution of her dependency status outweighs any benefit from further reunification services; and any other relevant factors the parties may bring to the court's attention." (*Mark N. v. Superior Court, supra,* 60 Cal.App.4th at p. 1017.)

Contrary to the agency's argument, the amendment of sections 361.5, subdivision (a)(4) and 366.22, subdivision (b), effective January 1, 2009, did not limit the court's discretion to continue an 18-month hearing and extend services under section 352. These

---

[4]    Section 352 states: "Upon request of counsel . . . the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [¶] Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. . . ."

amendments, which permit the extension of reunification services up to 24 months to certain parents in substance abuse programs or recently discharged from incarceration or institutionalization,[5] were intended to "provide additional circumstances in which court-

---

[5] Section 361.5, subdivision (A)(4) provides in relevant part: "Notwithstanding paragraph (3), court-ordered services may be extended up to a maximum time period not to exceed 24 months after the date the child was originally removed from physical custody of his or her parent or guardian if it is shown, at the hearing held pursuant to subdivision (b) of Section 366.22, that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period. The court shall extend the time period only if it finds that it is in the child's best interest to have the time period extended and that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian who is described in subdivision (b) of Section 366.22 within the extended time period, or that reasonable services have not been provided to the parent or guardian. If the court extends the time period, the court shall specify the factual basis for its conclusion that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period. The court also shall make findings pursuant to subdivision (a) of Section 366 and subdivision (e) of Section 358.1."

Section 366.22, subdivision (b) provides in relevant part: "If the child is not returned to a parent or legal guardian at the permanency review hearing and the court determines by clear and convincing evidence that the best interests of the child would be met by the provision of additional reunification services to a parent or legal guardian who is making significant and consistent progress in a court-ordered residential substance abuse treatment program, a parent who was either a minor parent or a nonminor dependent parent at the time of the initial hearing making significant and consistent progress in establishing a safe home for the child's return, or a parent recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security and making significant and consistent progress in establishing a safe home for the child's return, the court may continue the case for up to six months for a subsequent permanency review hearing, provided that the hearing shall occur within 24 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian. The court shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent or legal guardian. For the purposes of this section, in order to find a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time, the court shall be required to find all of the following: [¶] (1) That the parent or legal guardian has consistently and regularly contacted and visited with the child. [¶] (2) That the parent or legal guardian has

8

ordered services may be extended" and to "require the court, in determining whether court-ordered services may be extended, to consider the special circumstances of an incarcerated or institutionalized parent or parents, or parent or parents court-ordered to a residential substance abuse treatment program." (Legis. Counsel's Dig., Assem. Bill No. 2070, Stats. 2008, ch. 482 (2007-2008 Reg. Sess.).) While section 366.22, subdivision (b) is not applicable in this instance, the new provision did not limit the court's discretion to extend services based on a finding that reasonable reunification services were not provided.

The agency's reliance on *San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215 is not persuasive. In that case, the court held that services could not be extended where there was no substantial evidence to support any of the trial court's findings under section 366.22, subdivision (b). (227 Cal.App.4th at pp. 223-224.) The appellate court also concluded that there was no substantial evidence to support the trial court's finding that mother had not been provided reasonable reunification services. (*Id.* at p. 224.) Then, in dicta, the court stated, "In any event, the juvenile court did not, and could not (on these facts) make the necessary findings to extend services beyond 18 months, regardless of whether or not reasonable services were provided. As we have discussed, the statutorily required factors were not present. Nor did any external factors prevent mother from participating in a case plan, as set forth in *In re Elizabeth R.*[*, supra,*] 35 Cal.App.4th 1774, and the cases cited therein." (227 Cal.App.4th at pp. 224-225.) The appellate court did not consider, however, whether the trial court had discretion under section 352 to continue the 18-month review hearing and extend reunification

---

made significant and consistent progress in the prior 18 months in resolving problems that led to the child's removal from the home. [¶] (3) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her substance abuse treatment plan as evidenced by reports from a substance abuse provider as applicable, or complete a treatment plan postdischarge from incarceration, institutionalization, or detention, or following deportation to his or her country of origin and his or her return to the United States, and to provide for the child's safety, protection, physical and emotional well-being, and special needs."

9

services up to 24 months upon a showing of good cause. Nor did the court consider whether the Legislature intended to limit the court's discretion under section 352 by enacting section 366.22 subdivision (b). It is well established that "[a]n opinion is not authority for propositions not considered." (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195.) To the extent the court's dicta suggests a contrary rule, we respectfully disagree.

Substantial evidence supports the court's finding that reasonable reunification services were not provided. To support a finding reasonable services were offered or provided, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) The "adequacy of reunification plans and the reasonableness of the [agency's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) Reunification services should be tailored to the particular needs of the family. (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793.) The social services agency must make a "good faith effort" to provide reasonable services that are responsive to each family's unique needs. (*Mark N. v. Superior Court*, *supra*, 60 Cal.App.4th at p. 1010.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

Here, the petition was sustained based on allegations that minor was contemplating suicide and engaging in behaviors that posed a substantial danger to herself. The case plan expressly required a psychological evaluation. Although the agency reported at the six-month review hearing that a "psychological evaluation" had been completed, the agency conceded at the 18-month review hearing that in fact an evaluation had not been conducted. Although the molestation of the younger sister was not alleged in the petition as a ground for the dependency, it was apparent to all involved

that it was a "core issue" and the primary barrier to reunification. Despite this recognition, minor was offered only general individual and family therapy. The trial court reasonably concluded that the provision of generalized therapy, without a further assessment, was not tailored to meet the family's specific needs.

The court was not required to find, as the agency suggests, that there was a substantial probability that the mother and minor will reunify within the extended time period. Rather, the court was required to balance a number of factors, including "the likelihood of success of further reunification services," in determining whether the continuance was in the minor's best interests. (*Mark N. v. Superior Court, supra,* 60 Cal.App.4th at p. 1017.) Given minor's expressed desire to return home and mother's commitment to participate in services, the court reasonably concluded that there was a strong likelihood minor would reunify with proper treatment. We find no abuse of discretion in the extension of services under these circumstances.

Finally, the court did not exceed its authority by directing the agency to provide a specific type of therapy. The court faulted the agency for failing to properly evaluate minor to determine whether the treatment it was providing was sufficient to eliminate the core obstacle to reunification. In extending services, the court directed the agency to complete the psychological evaluation initially included in the minor's case plan and to provide services consistent with the results of that assessment.

## Disposition

The juvenile court order is affirmed.

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.

12

Trial court:                               Alameda County Superior Court

Trial judge:                               Honorable Ursula Jones Dickson

Counsel for plaintiff and appellant:       Donna R. Ziegler and Samantha N. Stonework-Hand, County Counsel for Alameda County Social Services Agency

Counsel for defendant and respondent:      S. Lynne Klein for T.G., under appointment by the Court of Appeal.

                                           Valerie Lankford for J.E.